694 So.2d 46 (1997)
The BOARD OF REGENTS OF the STATE OF FLORIDA, Robert M. Thompson, M.D., as an employee of The Board of Regents of The State of Florida, K. Cooper, M.D., as an employee of The Board of Regents of The State of Florida, and University Medical Center, Inc., a Florida corporation, Appellants,
v.
Devin ATHEY, a minor, By and Through his guardians and natural parents, David ATHEY And Karen D. Athey, a/k/a, Karen Simcic, David Athey And Karen D. Athey, A/K/A Karen D. Simcic, Individually; Chanyse Chanelle Wilson Broaden, a minor, by and through her mother and next friend, Teresa Lynn Wilson, and Teresa Lynn Wilson, Individually, and Eric Jerome Broaden, The father of the infant claimant; and The Florida Neurological Injury Compensation Association, Appellees.
No. 95-229.
District Court of Appeal of Florida, First District.
January 31, 1997.
*47 Ronald L. Harrop, David B. Falstad and Francis E. Pierce, III of Gurney & Handley, P.A., Orlando; Stephen E. Day and P. Heath Brockwell of Taylor, Day & Rio, Jacksonville, for Appellants.
Kimberly Sands of Sands, White & Sands, P.A., Daytona Beach, for Appellees Wilson-Broaden.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami; Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for Appellees Athey-Simcic.
Bruce Culpepper and William E. Whitney of Pennington & Haben, P.A., Tallahassee, for Appellee Florida NICA.

REVISED OPINION
VAN NORTWICK, Judge.
This appeal raises questions concerning whether the notice required to be given under section 766.316, Florida Statutes (1989), is a condition precedent to health care providers asserting exclusivity under The Florida Neurological Injury Compensation Association (NICA) and whether the health care provider must have a reasonable opportunity to provide such notice. The Florida Board of *48 Regents (the Board), University Medical Center, Inc. (UMC), and certain attending and resident physicians employed by the Board to provide obstetrical services at UMC appeal a summary final judgment in their consolidated declaratory judgment actions against appellees, two claimant families who filed notices of intent to initiate actions pursuant to section 766.106, Florida Statutes (1989), for neurological damages suffered by the infant claimants allegedly as the result of medical negligence during labor and delivery at UMC. The trial court, in granting summary judgment in favor of the claimant families, ruled (i) that the pre-delivery notice to the obstetric patient under section 766.316 is a condition precedent to a health care provider asserting NICA as the patient's exclusive remedy, (ii) that the claimant families were not limited to the remedies available under NICA, but could pursue their common law remedies, because the pre-delivery notice was not provided and (iii) that the health care providers here had a reasonable opportunity to give the required notice. On appeal the health care providers argue that notice under section 766.316 is not a condition precedent to their invoking NICA as the exclusive remedy of the claimant families and that, because of the circumstances present here, the trial court erred in determining that as a matter of law the health care providers had a reasonable opportunity to comply with section 766.316. For the reasons set forth below, we affirm as to UMC, but reverse as to the physician-appellants and the Board, and remand for further proceedings. We also certify a question of great public importance.

Factual Background and Procedural History
Both obstetrical patients in these consolidated cases were Medicaid patients who received substantially all of their prenatal care from nurse midwives and registered nurses at the Duval County Public Health Unit Clinic. By contract, UMC provided all maternity services to patients of the clinic and the clinic referred obstetrical patients, such as appellees, to UMC for prenatal ultrasound procedures and for delivery. Although UMC provided certain prenatal services to the appellee-patients, the record does not reflect whether either the attending or resident appellant-physicians directly provided prenatal medical services to the appellees or had any contact with appellees prior to delivery. No birthing centers, health care facilities or hospitals, other than UMC, provided obstetrical services in Duval County to Medicaid patients at the time these patients were admitted at UMC.
Each obstetrical patient presented to UMC in labor and each was admitted under the care of resident physicians and an attending board-certified obstetrician/gynecologist, all employed by the Board. Each attending physician was a NICA participating physician. Each resident physician was deemed an NICA participating physician pursuant to section 766.314(4)(c), Florida Statutes (1989). Upon or immediately prior to admission each patient signed a consent form for "Obstetrical Delivery: To Deliver My Baby Vaginally or by Caesarian Section With Anesthesia as Necessary." One infant was delivered by caesarean section approximately 4 3/4 hours after the patient's admission and the other infant was vaginally delivered approximately 31 hours after the patient's admission. The parties have stipulated that the notice required by section 766.316 was not given to either of these patients.
Pursuant to section 766.106, Florida Statutes (1989), each claimant family filed a "Notice of Intent to Initiate Litigation" for neurological damages allegedly caused by medical negligence. Thereafter, the appellants brought the instant declaratory judgment actions against the claimant families seeking a declaration that the claimants were limited to the remedies available under NICA. The claimant families filed answers alleging, as affirmative defenses, that the Board, as employer of the appellant-physicians, and UMC failed to provide the NICA notice specified by section 766.316 and that such notice is a condition precedent to the exclusive remedy provision of NICA.
After a stipulated consolidation of the actions, the parties filed motions for summary judgment. In their motions, the claimant families contended that they were not subject *49 to the NICA exclusive-remedy provision, since the appellants failed to provide the predelivery NICA notice. The appellants' motion sought a determination that any failure to provide the predelivery NICA notice did not obviate NICA's exclusive remedy provision.
In a lengthy order, the trial court granted the motions for summary judgment of the claimant families as to all appellants and denied the motions of the health care providers. In addition to finding that section 766.316 required pre-delivery notice as a condition precedent to the health care provider's assertion of NICA exclusivity, the trial court addressed the question of whether the health care providers had a reasonable opportunity to give the required notice. After reciting the facts set out above, the trial court concluded that "the evidence indisputably shows and the Court determines, that University Hospital had reasonably sufficient time and opportunity to give the notice required by the statute after each woman arrived at the hospital and before delivery was accomplished." Of particular significance to the trial court was the fact that UMC obtained consent forms from the women upon their admission and "there is no apparent reason why the patient could not have been given notice of her rights and limitations under NICA at that time." This appeal followed.

Section 766.316 Notice as Condition Precedent
Under the Florida Birth-Related Neurological Injury Compensation Plan, participating health care providers are required to comply with the following notice requirement:
Each hospital with a participating physician on its staff and each participating physician, other than residents, assistant residents, and interns deemed to be participating physicians under s. 766.314(4)(c), under the Florida Birth-Related Neurological Injury Compensation Plan shall provide notice to the obstetrical patients thereof as to the limited no-fault alternative for birth-related neurological injuries. Such notice shall be provided on forms furnished by the association and shall include a clear and concise explanation of a patient's rights and limitations under the plan.
§ 766.316, Fla.Stat. (1989).
Under the plan, a "participating physician" is one who is "licensed in Florida to practice medicine who practices obstetrics or performs obstetrical services either full time or part time and who had paid or was exempted from payment at the time of the injury the assessment required for participation" in NICA. § 766.302(7), Fla. Stat. (1989). Thus, if a hospital has a "participating physician" on staff, to avail itself of NICA exclusivity the hospital is required to give pre-delivery notice to its obstetrical patients. In addition, except for residents, assistant residents and interns who are exempted from the notice requirement, a participating physician is required to give notice to the obstetrical patients to whom the physician provides services. Under section 766.316, therefore, notice on behalf of the hospital will not by itself satisfy the notice requirement imposed on the participating physician(s) involved in the delivery.
The question of whether the notice under section 766.316 is a condition precedent to the applicability of NICA was resolved by this court during the pendency of this appeal. Braniff v. Galen of Florida, Inc., 669 So.2d 1051 (Fla. 1st DCA 1995), rev. granted, 670 So.2d 938 (Fla.1996). In Braniff, this court held that the notice of NICA participation required by section 766.316 must be given to obstetrical patients prior to delivery and the giving of such notice was a condition precedent to the health care provider invoking NICA as the patient's exclusive remedy. Id. at 1052. As this court explained:
[L]anguage in section 766.316 indicates that ... the notice concerns "the limited no-fault alternative for birth-related neurological injuries," and its content consists of "a clear and concise explanation of a patient's rights and limitations under [NICA]." (Emphasis added). This language indicates that notification is intended to permit an informed choice between "alternatives" before delivery rather than *50 simply as a means of informing potential claimants of NICA's procedural requirements after delivery. It would make little sense to inform an obstetrical patient of her "alternative" after the patient had already utilized the services of a NICA participant and had thus given up her chance to pursue a civil remedy. It would make still less sense to require pre-delivery notice as a means of informing patients of their options, yet not make such notice a condition precedent to the defendants' assertion of NICA exclusivity. In short, we reject the notion that a NICA health care provider can ignore the notice requirement and then assert NICA exclusivity to defeat a civil action.
Id. at 1052-53 (footnote omitted). See also, Turner v. Hubrich, 656 So.2d 970 (Fla. 5th DCA 1995); Sierra v. Public Health Trust of Dade County, 661 So.2d 1296, 1299 n. 5 (Fla. 3d DCA 1995); Mills v. North Broward Hospital District, 664 So.2d 65 (Fla. 4th DCA 1995), rev. granted sub. nom., Domond v. Mills, No. 87,270, 678 So.2d 338 (Fla. July 11, 1996). As in Braniff, we certify the following question as one of great public importance:
WHETHER SECTION 766.316, FLORIDA STATUTES (1993), REQUIRES THAT HEALTH CARE PROVIDERS GIVE THEIR OBSTETRICAL PATIENTS PRE-DELIVERY NOTICE OF THEIR PARTICIPATION IN THE FLORIDA BIRTH RELATED NEUROLOGICAL INJURY COMPENSATION PLAN AS A CONDITION PRECEDENT TO THE PROVIDERS' INVOKING NICA AS THE PATIENTS' EXCLUSIVE REMEDY?

Reasonable Opportunity to Provide Notice
The appellants also argue that, even if a pre-delivery notice under section 766.316 is a condition precedent to their NICA immunity, the trial court erred in finding that the appellants had a reasonable opportunity to provide the NICA notice. Appellants do not argue that a medical emergency prevented the giving of the notice in the instant case. Recognizing that the notice under section 766.316 "is intended to permit an informed choice between `alternatives' before delivery," Braniff, 669 So.2d at 1053, appellants reason that the patients here had no real choice in delivery alternatives because, as the undisputed facts reflect, there were no other hospitals or birthing centers in the county where these Medicaid patients could have gone for the birth of their children. Further, appellants contend, since these patients were in active labor when they presented to UMC, it would have been medically unsafe and inappropriate to have transferred them to another health care institution for delivery. Thus, appellants argue, these patients were denied an "informed choice," not because of any failure to provide the NICA notice, but because they were precluded from seeking care at a health care facility other than UMC as a result of both their status as Medicaid patients and their medical conditions. Since no "informed choice" was possible for these patients at the time they presented to UMC under the instant circumstances, appellants argue they had no opportunity to provide an efficacious notice under section 766.316.
We find this argument to be without merit. Appellants are inviting this court to determine, since pre-delivery NICA notice is required under Braniff, at which point prior to delivery the notice must be given to provide "an informed choice between `alternatives' before delivery." Id. We decline this invitation. To accept such an invitation, this court would encourage uncertainty not only by permitting health care providers to "ignore the notice requirement and then assert the NICA exclusivity to defeat a civil action," id., but also by allowing future claimants to challenge any notice given on the grounds that their pre-delivery notice came too late to provide realistic choice of alternative providers.
We believe the use of a bright-line rule here will be most in keeping with the legislative intent of the notice requirement in section 766.316. We hold that health care providers who have a reasonable opportunity to give notice and fail to give predelivery notice under section 766.316, will lose their NICA exclusivity regardless of whether the circumstances precluded the patient making an effective choice of provider at the time the *51 notice was provided.[1]See, Levine v. Dade County School Board, 442 So.2d 210, 213 (Fla.1983)("Consideration of the efficacy of or need for the notice requirement is a matter wholly within the legislative domain."). Having failed to take advantage of a reasonable opportunity to provide pre-delivery notice, a health care provider will not be heard to complain that notice, if given, would have been ineffective.
The undisputed facts here support the trial court's conclusion that as a matter of law UMC had a reasonable opportunity to provide a NICA notice to the appellees. Weeks prior to these obstetrical patients presenting for delivery, UMC performed prenatal ultrasound procedures for these patients and had knowledge that these patients would deliver their babies at UMC. In addition, at the time these patients presented for delivery, UMC had the opportunity to obtain other written consents, but failed to provide the NICA notice. We, therefore, affirm the ruling of the trial court as to UMC.
Although the trial court also granted summary judgment as to the appellant-physicians and the Board, as their employer, the order on appeal does not address whether the attending physicians, who are required to provide section 766.316 notice, had a reasonable opportunity to provide that notice. In fact, the limited record here does not indicate, for example, whether prior to delivery these attending physicians had any prenatal or other prior professional relationship with these patients such that the NICA notice could reasonably have been given. Further, although the trial court correctly concluded that the resident physicians were not required to provide NICA notice, the order on appeal nevertheless grants summary judgment as to the resident physicians and the Board, as their employer, presumably because no NICA notice was provided.
Accordingly, we reverse as to the appellant-physicians and the Board and remand to the trial court to make findings and conclusions relating to those parties. On remand, the trial court will be able to expressly consider such issues as whether the undisputed material facts support a conclusion that the attending physicians had reasonable opportunity to provide NICA notice; whether, if no reasonable opportunity for notice was available, the exclusive remedy provision of NICA precludes the appellees common law claims against these physicians and the Board, as their employer; and whether, as a result of the resident physicians' exemption from the NICA notice requirement, notwithstanding the lack of the NICA notice, the appellees are limited to pursuing NICA remedies against the resident physicians and the Board, as their employer.[2]
AFFIRMED in part, REVERSED in part, REMANDED for proceedings consistent with this opinion, and question certified.
MINER and WOLF, JJ., concur.
NOTES
[1] This case does not present us with circumstances in which a reasonable opportunity for notice is not available to the provider due to an emergency or similar situation, or in which patients with real delivery alternatives are provided notice too late to allow for the exercise of an informed choice. Thus, we do not address here whether a medical emergency existed for any of these patients or consider any of these hypothetical situations.
[2] In their motions for rehearing, appellants argue that, if appellees are limited to pursuing NICA remedies as to any appellant, section 766.303(2), Florida Statutes (1989), bars appellees from pursuing a common law action against any other appellant for a birth-related neurological injury. This issue, however, was not argued below or in the main argument here. Accordingly, we decline to address this issue on rehearing. Sag Harbour Marine, Inc. v. Fickett, 484 So.2d 1250 (Fla. 1st DCA 1986).